## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN TAX RELIEF LLC, d/b/a )<br>American Tax Relief, )<br><br>ALEXANDER SEUNG HAHN, a/k/a Alex Hahn, )<br>individually and as an officer or director of )<br>AMERICAN TAX RELIEF LLC, )<br><br>JOO HYUN PARK, a/k/a Joo Park, )<br>individually and as an officer or director of )<br>AMERICAN TAX RELIEF LLC, )<br><br>Defendants, and )<br><br>YOUNG SOON PARK, a/k/a Young S. Son, and )<br><br>IL KON PARK, )<br><br>Relief Defendants. )<br> ) | 10cv6123<br>Judge  Charles P. Kocoras<br>Magistrate Arlander Keys<br><br><br>F I L E D<br><br>SEP 2 4 2010 NF<br>*Sep 24, 2010*<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive

relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement

of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. § 53(b).

## DEFENDANTS

6.      Defendant American Tax Relief LLC, also doing business as American Tax Relief ("ATR"), is a California limited liability company with its principal place of business at 8383 Wilshire Blvd., Suite 900, Beverly Hills, California 90211.  ATR transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, ATR has advertised, marketed, or sold tax relief services to consumers throughout the United States.

7.      Defendant Alexander Seung Hahn, also known as Alex Hahn ("Hahn"), is an officer, director and/or owner of ATR.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of ATR, including the acts and practices set forth in this Complaint. Defendant Hahn, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

8.     Defendant Joo Hyun Park, also known as Joo Park ("Park"), is an officer, director, and/or owner of ATR. She is the wife of Defendant Hahn. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ATR, including the acts and practices set forth in this Complaint. Defendant Park, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9.     Relief Defendant Young Soon Park, also known as Young S. Son, the mother of Defendant Park, is an individual who has received funds or other property that can be traced directly to Defendants' deceptive and unfair acts or practices alleged below, and she has no legitimate claim to those funds. Young Soon Park resides in California.

10.     Relief Defendant Il Kon Park, the father of Defendant Park and husband of Relief Defendant Young Soon Park, is an individual who has received funds or other property that can be traced directly to Defendants' deceptive and unfair acts or practices alleged below, and he has no legitimate claim to those funds. Il Kon Park resides in California.

## COMMERCE

11.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

12.     Since at least October 1999, Defendants have induced consumers to pay exorbitant fees for Defendants' supposed tax relief services by making false claims and material misrepresentations to consumers about whether consumers qualify for particular tax relief programs and about Defendants' abilities to significantly reduce their tax debts.  Defendants also have withdrawn money from some consumers' bank accounts or placed charges on their credit cards without consumers' express consent.  Defendants have failed to provide consumers with the promised services and typically refuse to return consumers' money when asked.  Between January 2004 and October 2008 alone, Defendants took in a total of approximately $60,513,638 in payments from thousands of consumers.

### Defendants' Advertisements

13.     Defendants have advertised, offered for sale, and sold services that purport to assist consumers in significantly reducing their tax liabilities with the Internal Revenue Service ("IRS") and state taxing authorities.  Defendants have promoted their tax relief services to prospective purchasers throughout the United States using a variety of media, including television, radio, direct mail and Yellow Pages advertisements, and the Internet.

14.     In their advertisements, Defendants claim that they can settle consumers' delinquent taxes, as well as their accrued penalties and interest (collectively, "tax debts") with the IRS and state taxing authorities for a fraction of the amount owed.  Defendants further represent that, among other things, they can stop wage garnishments, bank levies, tax levies, property seizures, and "Unbearable Monthly Payments," and they can also remove tax liens.

15.     Defendants claim that they have helped thousands of consumers settle their tax debts.  Defendants' Internet website represents that they have "successfully resolved thousands

-4-

of cases in all 50 states." The sales representatives further represent that Defendants have had

more than 19,000 satisfied clients in over ten years.

      16.     In their advertisements, Defendants provide testimonials from people whom they

have purportedly assisted in substantially reducing their tax debts with the IRS. In one

testimonial, a couple claims that Defendants were able to reduce their tax debt from $24,000 to

$2,000, while in another, a couple claims their tax debt went from $200,000 to $40,000 with

Defendants' help.

      17.     Defendants create a sense of urgency on their Internet website by claiming the

IRS is offering a "ONE-TIME opportunity" to settle tax debts "ONCE AND FOR ALL," and

that while "millions of U.S. Taxpayers may be eligible for an Offer in Compromise settlement,

only a very few percentage of them have been able to take advantage of this program allowed by

federal law." In letters sent to prospective customers, who already have contacted Defendants

by telephone, Defendants warn that consumers should act now because "the government has

recently given more funding to the Collection Branch of the IRS to be more aggressive when

going after taxpayers with overdue debts."

      18.     Defendants claim that they have an expertise in helping consumers settle their

delinquent tax debts with the IRS. Defendants describe themselves as a "nationwide firm

specializing only in helping people resolve their delinquent tax liabilities" and represent that they

have tax professionals on staff with years of experience, who "know the secrets" and strategies

to save consumers a "significant amount of money" in settling their tax debts with the IRS.

Defendants' representatives also tell consumers that Defendants have a staff of attorneys,

enrolled agents, and tax specialists or practitioners who handle between 150 to 200 cases per

month.

19.     Defendants' advertisements and Internet website include toll-free numbers for consumers to call for a "free consultation" about their tax debts.

**Defendants' Sales Calls**

20.     When consumers call Defendants, Defendants' representatives ask consumers a few questions about their tax debts, and sometimes about their income, assets, and liabilities. Consumers are then put on hold while Defendants' representatives purportedly determine whether the consumers "qualify" for tax relief services.  Virtually all the consumers are then told that they "qualify," usually for either an "Offer in Compromise," which will "settle" their tax debt, or a "Penalty Abatement," which will reduce their tax debt and allegedly remove penalties and interest.  In many cases, Defendants' representatives also tell consumers that, by hiring Defendants, the consumers' tax debts will be reduced by 50% or more.  Defendants' representatives tell consumers that the process will take about three to six months.

21.     Defendants' representatives typically tell consumers that, in order to receive Defendants' tax relief services, they need to provide a fax number to which Defendants can fax them authorization forms so that Defendants can file the paperwork with the IRS and/or states and start working on consumers' cases right away.  Consumers are also required to make up-front payments over the telephone, either through charges to their credit card or debits from their bank accounts.  These up-front payments have ranged from approximately $3,200 to $25,000 or more for each consumer, and supposedly cover consumers' cases from "start to finish." Consumers who cannot afford to pay the entire fee up-front are given the option of paying Defendants' fee in two or three installments, with the first installment paid up-front.  Consumers who do not agree to make payments during the call are sometimes pressured into giving Defendants personal information, such as their credit card or bank account information.

### Defendants' Alleged Tax Relief Services

22.     Many consumers receive a fax from Defendants the same day as their initial

telephone call with Defendants' representatives.  The fax includes a letter congratulating the

consumer for contacting Defendants and confirming that, "[b]ased on the information provided"

by the consumer, the consumer qualifies for the tax relief programs promised during the initial

call, such as an "Offer-in-Compromise" that "allows people to settle their total tax debt for a

fraction of the debt," or a "Penalty Abatement" which will "remove the penalties and interest"

from the consumer's tax debt.  The letter represents that Defendants "have successfully served

thousands of individuals and businesses nationwide" and promises "a prompt solution to [the

consumer's] tax problem."  The fax also includes two IRS forms, a Power of Attorney and

Declaration of Representative form (Form 2848) and a Tax Information Authorization form

(Form 8821), to be filled out and returned to Defendants.

23.     Approximately four or more days after receiving the fax from Defendants,

consumers receive a package in the mail from Defendants that includes two letters and some

questionnaires that the client is directed to fill out.  The first letter thanks the consumer for

becoming a client, acknowledges payment, and instructs the consumer to fill out the

questionnaires.  The second letter, which comes from "The Accounting Department," appears to

be a receipt of the consumer's initial payment to Defendants, and provides information on the

balance due, if any.  There is also a statement in this second letter, in smaller print, relating to

Defendants' cancellation policy.  It states: "If you decide to cancel our services, you have 5 days

from the date of this letter to notify us in writing.  You will be refunded up to 50% of the fee

only if the fee is paid in full.  This pays for the preliminary work and advice you have already

received.  The finalized work will not be sent to you until the fee is paid in full."  This is the first

time consumers are told of Defendants' cancellation policy.  Most consumers do not notice this statement, and often this cancellation period is about to expire, or already has expired, by the time consumers receive notice of this policy.

24.     Consumers who have been charged for Defendants' tax relief services do not receive the promised services or results.  Instead, Defendants provide only a series of excuses as to why they have not made progress in reducing consumers' tax liabilities.  Defendants often blame consumers for Defendants' lack of progress.  Defendants' excuses include, but are not limited to, claims that consumers failed to provide, or were dilatory in providing, all of the paperwork or information necessary to settle their tax debts; consumers failed to pay the balance owed to Defendants to complete the work; and consumers "lied" to Defendants about the extent of their tax liabilities or other information during their initial consultations with Defendants' representatives.

25.     Defendants also sometimes demand additional money from consumers, supposedly to enable them to continue working on consumers' cases.  In some cases, Defendants claim the additional money is needed because the cases required more work than they were initially hired to do since consumers lied or failed to inform Defendants about the full extent of their tax liabilities.  In other cases, Defendants claim they need more money because their Powers of Attorney supposedly expired or deadlines have been missed by consumers.

26.     In some cases, Defendants also charge consumers more than the amount consumers authorized by placing additional charges on consumers' credit cards or by withdrawing money from consumers' bank accounts.  In other cases, Defendants charge the credit cards, or withdraw money from the bank accounts, of consumers who have not authorized Defendants to place any charges on their accounts.

-8-

27.      In reality, very few of the consumers with whom Defendants speak qualify for the Offers in Compromise, Penalty Abatements, or substantial reductions in their tax debts that they have been promised by Defendants' representatives.  Because of the strict requirements that must be met for an Offer in Compromise or Penalty Abatement, relatively few taxpayers actually qualify.  A consumer's eligibility for these programs cannot reasonably be determined without a much more comprehensive review and analysis of a consumer's financial condition and tax debt than Defendants perform in their initial consultation with consumers.

28.      Instead, the majority of consumers who hire Defendants to obtain Offers in Compromise or Penalty Abatements only qualify, at most, for installment agreements. Installment agreements typically require consumers to pay the full amount of their tax debts, but rather than requiring that the entire sum be paid at once, installment agreements enable consumers to make smaller monthly payments until their entire tax debt is satisfied.  Installment agreements are generally easy for consumers to arrange for themselves.  When consumers who hire Defendants do not obtain the promised Offers in Compromise, Penalty Abatements, or significant reductions in their tax debts, Defendants sometimes offer to help consumers get installment agreements instead.  Consumers who pay thousands of dollars to Defendants are not interested in having Defendants assist them in entering into installment agreements, however, since they were initially told they would see huge reductions to their tax debts.

29.      When consumers request refunds from Defendants, Defendants typically refuse to return consumers' money, once again blaming consumers for Defendants' failure to obtain the promised relief from consumers' tax debts.  Defendants also sometimes cite to their inadequately disclosed five-day cancellation policy, which requires consumers to cancel in writing for "up to 50% of the total fee only if the fee is paid in full," as the basis for refusing to refund consumers'

money.  In rare instances, Defendants provide partial refunds to consumers who file complaints with law enforcement agencies or the Better Business Bureau, or who file their own lawsuits against ATR.

## VIOLATIONS OF THE FTC ACT

30.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

31.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## COUNT I

32.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' tax relief services, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants have significantly reduced the tax debts of thousands of people.

33.     In truth and in fact, Defendants have not significantly reduced the tax debts of thousands of people.

34.     Therefore, Defendants' representation as set forth in Paragraph 32 of the Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

35.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' tax relief services, Defendants have represented, directly or indirectly, expressly or by implication, that:

       a.     Consumers qualify for a tax relief program, including, but not limited to, an Offer in Compromise or a Penalty Abatement; and

       b.     By purchasing Defendants' services, consumers will be able to obtain a settlement that significantly reduces their total tax debts.

36.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 35 of this Complaint:

       a.     Consumers do not qualify for a tax relief program, including, but not limited to, an Offer in Compromise or a Penalty Abatement; and

       b.     By purchasing Defendants' services, consumers are not able to obtain a settlement that significantly reduces their total tax debts.

37.     Therefore, Defendants' representations as set forth in Paragraph 35 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

38.     In numerous instances, Defendants have caused consumers' bank accounts to be debited, or consumers' credit cards to be charged, without first obtaining consumers' express informed consent.

39.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

40.     Therefore, Defendants' practices, as described in Paragraph 38 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## COUNT IV

41.     Relief Defendants, Young Soon Park and Il Kon Park, have received, directly or indirectly, funds or other assets from Defendants that are traceable to funds obtained from Defendants' customers through the deceptive and unfair acts or practices described herein.

42.     Relief Defendants are not bona fide purchasers with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendants will be unjustly enriched if they are not required to disgorge the funds or the value of the benefit they received as a result of Defendants' deceptive and unfair acts or practices.

43.     By reason of the foregoing, Relief Defendants hold funds and assets in constructive trust for the benefit of Defendants' customers.

## CONSUMER INJURY

44.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

45.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations

-12-

of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable

jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and

remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b),

and the Court's own equitable powers, requests that the Court:

1. Award Plaintiff such preliminary injunctive and ancillary relief as
   may be necessary to avert the likelihood of consumer injury during
   the pendency of this action and to preserve the possibility of
   effective final relief, including but not limited to, temporary and
   preliminary injunctions, an order freezing assets, immediate
   access, and appointment of a receiver;

2. Enter a permanent injunction to prevent future violations of the FTC Act by
   Defendants;

3. Award such relief as the Court finds necessary to redress injury to
   consumers resulting from Defendants' violations of the FTC Act,
   including but not limited to, rescission or reformation of contracts,
   restitution, the refund of monies paid, and the disgorgement of ill-gotten
   monies;

4. Enter an order requiring Relief Defendants to disgorge all funds and assets, or the
   value of the benefit they received from the funds and assets, which are traceable
   to  Defendants' deceptive and unfair acts or practices; and

-13-

5.    Award Plaintiff the costs of bringing this action, as well as such

other and additional equitable relief as the Court may determine to

be just and proper.

Dated: September 24, 2010                    Respectfully Submitted,

WILLARD K. TOM
General Counsel

KAREN D. DODGE
MARISSA J. REICH
Attorneys for Plaintiff
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 (telephone)
(312) 960-5600 (facsimile)